IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EVAN G. FORD, *et al.*,

    *Plaintiffs,*

v.

    Civil Action No. ELH-14-00824

KARPATHOES, INC., *et al.*,

    *Defendants.*

## MEMORANDUM

Plaintiff Rafael Coppola,[1] along with five others, filed suit against Karpathoes, Inc., George Sakellis, and Roula Sakellis, defendants, under, *inter alia*, the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA").  *See* ECF 1.  This Memorandum addresses plaintiff Coppola's Motion for Attorney's Fees (ECF 26, "Motion").  The Motion is filed pursuant to a Judgment in favor of plaintiff under Fed. R. Civ. P. 68 (ECF 19-1, Order),[2] and pursuant to the FLSA, 29 U.S.C. § 216(b).  The FLSA entitles a prevailing plaintiff to recover reasonable attorney's fees and costs.  Although the Offer of Judgment, ECF 13-1, expressly stated that defendants would pay plaintiff's "reasonable attorneys' fees and costs, … in accordance with Federal principles," ECF 13-1 at 2, the parties have been unable to agree on a reasonable amount.

In support of his Motion, plaintiff submitted affidavits from his two attorneys, Howard B. Hoffman, Esq., and Bradford W. Warbasse, Esq.  *See* ECF 26-2, "Hoffman Aff."; ECF 26-3, "Warbasse Aff."  Plaintiff also submitted detailed tables summarizing the hours each attorney

---

[1] From time to time, plaintiff's first name is spelled "Raphael." *See*, *e.g.*, ECF 19.  I shall use the spelling that appears in the Complaint.

[2] The parties filed a "Joint Motion for Judicial Approval of Defendants' Rule 68 Offer of Judgment. . . ."  ECF 19.

expended on work they attribute to plaintiff's claims. *See* ECF 26-1 at 1-4 (Warbasse); ECF 26-1 at 7-9 (Hoffman) (collectively, the "Tables"). Defendants have opposed the Motion. ECF 31, "Opposition." They submitted eleven exhibits, ECF 31-1 through ECF 31-11, mostly consisting of emails, and all pertaining to the parties' fee negotiations. Plaintiff has replied. ECF 35, "Reply." In support of his Reply, plaintiff has submitted six exhibits, ECF 35-1 through ECF 35-6, including, *inter alia*, emails pertaining to fee negotiations and affidavits from other attorneys practicing in the Baltimore-Washington metropolitan region.

The Motion has been fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I will award plaintiff reasonable attorney's fees in the amount of $4,504.00 and costs in the amount of $540.00.

### Factual Background

### 1. Procedural History

On March 18, 2014, Coppola and two other plaintiffs, Dylan Clark and Evan G. Ford, filed suit against their alleged former employers, defendants Karpathoes, Inc., George Sakellis, and Roula Sakellis. ECF 1 ("Complaint"). Plaintiffs alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, and related State-law claims under Maryland's Wage and Hour Law ("MWHL"), Md. Code (2008 Repl. Vol.), § 3-401 *et seq.* of the Labor and Employment Article ("L.E."). *Id.* Coppola also alleged violations of the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code (2008 Repl. Vol.), L.E. § 3-501 *et seq. Id.*

On May 1, 2014, defendants filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). ECF 8. They argued that plaintiffs had not stated sufficient facts from which the Court could plausibly find that George and Roula Sakellis (the "Sakellis") were individually liable under

federal or state wage laws as "employers." ECF 8-1 at 5-13. Defendants also argued that plaintiffs' FLSA and MWHL claims, and Coppola's MWPCL claims, should be dismissed as implausible under Fed. R. Civ. P. 12(b)(6). *Id*. at 13-20. And, "in the alternative," defendants argued that Coppola's FLSA and MWHL claims should be dismissed because Coppola was exempt, as an "'employee employed in a bona fide executive … capacity.'" *Id*. at 23 (quoting 29 U.S.C. § 213(a)(1)).

In their Opposition, defendants assert that they presented Coppola and Ford with Rule 68 Offers of Judgment on May 12, 2014. ECF 31 at 2-3, 3 n.6. They note that plaintiff Clark had, by that time, already "expressed his desire to no longer be involved in the suit." *Id*. at 3 n.6. Plaintiff does not dispute the date of defendants' offer. Reply, ECF 35 at 5. Defendants explain that their offer of $5,600 to Coppola "was calculated based upon the claim for unpaid wages" in Coppola's MWPCL claim, *see* ECF 1 ¶ 15, and was equal to the full amount of wages demanded therein, *i.e.*, unpaid wages of $800 per week for seven weeks. ECF 31 at 2-3.

One week later, on May 19, 2014, Coppola, along with Clark and Ford, and three newly added plaintiffs, Troy M. Greensfelder, Maggie Desmond, and Zac Trautman, filed an Amended Complaint. *See* ECF 9 at 1. In addition to adding the three new plaintiffs, the Amended Complaint added allegations pertaining to the Sakellis' liability as "employers." *See generally* ECF 9-1 (redlined version of Amended Complaint). The Amended Complaint also minimally changed the allegations supporting wage claims of plaintiffs other than Coppola; except to renumber paragraph references, it did not change Coppola's MWPCL claim. *Id*. The same day, plaintiffs also moved for an extension of time in which to file a response to the Motion to Dismiss, ECF 10, which this Court granted. ECF 11 (Order).

On May 23, 2014, plaintiffs filed a thirteen-page Opposition to defendants' Motion to Dismiss.  ECF 12.  They argued, *inter alia*, that defendants' Motion to Dismiss should be denied as moot, in light of plaintiffs' Amended Complaint.  ECF 12 at 2.

Also on May 23, 2014, Coppola submitted a "Notice of Acceptance of Fed. R. Civ. P. Rule 68 Offer," ECF 13, along with a copy of the offer.  ECF 13-1 ("Offer").  On June 3, 2014, Coppola submitted a draft "Order of Judgment," based on the Offer.  ECF 17.  In light of the Court's duty to supervise waiver or settlement of FLSA claims, I directed the parties to "submit a joint letter explaining the basis for the proposed settlement and why it should be approved as fair and reasonable."  ECF 18 (Order) (citing, *e.g.*, *Taylor v. Progress Energy, Inc.*, 494 F.3d 454, 460 (4th Cir. 2007)).

On June 13, 2014, the parties field a "Joint Motion for Judicial Approval of Defendants' Rule 68 Offer of Judgment to Plaintiff Raphael Coppola and Stipulation to Extension of Time for Filing of Defendants' Motion to Dismiss."  ECF 19.  I granted the parties' motion on July 1, 2014.  ECF 20 (Order).  Judgment was entered in favor of Coppola on July 8, 2014.  ECF 24 (Order of Judgment).  The same day, with consent of the Court, the remaining plaintiffs filed a Second Amended Complaint (ECF 23), which, among other things, removed Coppola as a party.

### 2. Fee Negotiations and the Motion

As noted, both sides have submitted emails pertaining to fee negotiations.  Neither side has challenged the authenticity of the documents submitted.

On June 9, 2014, Warbasse emailed one of defendants' attorneys, Judd Millman, Esq., to say that plaintiff would accept a "fee of $2,240.00 in connection with Coppola's claims," and that "this payment would be shown as a credit when the last fee petition i[s] filed for all of the

Plaintiffs' attorneys' fees in this case."  ECF 31-2 (email).  Warbasse also attached what he called the "loadstar [sic] statement."  *Id.*  The short statement indicated that Warbasse had spent 20.5 hours on the case as a whole, and that Hoffman devoted 3.9 hours to it.  It also listed their rates as $400/hour and $325/hour, respectively.  ECF 31-3 (letter attachment).

On June 10, 2014, Millman emailed Warbasse to clarify plaintiff's fee offer.  ECF 31-4 at 2.  Millman stated that he had previously requested (at some earlier time unknown to the Court) "a statement as to the specific fees and costs incurred with regard to Mr. Coppola."  *Id.*  Millman also indicated that Warbasse had previously stated he would not provide such information to Millman in advance of any possible fee petition.  *Id.*  Millman concluded:  "As such, you are providing an alternative where Defendants either agree to pay the above $2,240 (which is unrelated to hours worked) or face a mystery fee that will only be presented in a future petition filed with the Court … ."  *Id.*

The next day, June 11, 2014, Warbasse responded:  "As we discussed, we have offered you the option of resolving the fee issue for $2,240.00 or allowing the Court to determine a reasonable fee.  If we need to file a fee petition we will be seeking more than $2,240, including the time spent resolving the fee petition.  However, we have not yet determined what that amount would be."  ECF 31-5 at 2.

That same day, Millman reiterated his request for "a statement as to the fees" and offered to pay $1,350 in attorney's fees, which defendants "calculated based upon [their] understanding of the legal work that was performed … , a reasonable amount of time that was necessary for doing such work, and a reasonable hourly rate for the performance of this preliminary work."  ECF 31-6 at 2.

Warbasse rejected the offer the next day, June 12, 2014, again asserting that plaintiff did "not yet know what amount of $$ [he] would be seeking in a fee position [sic]," because plaintiff's attorneys had "not yet drafted the petition and the time for preparing the fee petition will be included." ECF 31-7 at 2. Warbasse also reminded Millman that the Court had not yet approved the Offer. *Id.* Millman renewed his request for a more detailed statement of hours worked and fees requested. ECF 31-9 at 2 (email). Warbasse replied that he and Hoffman were "unwilling to provide detailed time records in a case in which 4 Plaintiffs are still pursuing active claims." *Id.*

On July 9, 2014, after this Court entered judgment in favor of Coppola, Millman emailed Warbasse to renew his request for a statement of fees and to reopen fee negotiations. ECF 35-2 (email). In response, Warbasse stated his belief that the parties "were already at an impasse" and that he had already begun drafting a fee petition. ECF 31-11 at 2. He indicated plaintiff would accept an offer "significantly higher" than $2,240. *Id.*

The next day, July 10, 2014, Warbasse sent another email to Millman with "an up-dated loadstar statement" attached, and asserted that the "total value" of plaintiff's attorneys' time was "$14,672.50, as of 7/9/2014." *See* ECF 35-1 at 1 (email); ECF 35-1 at 2-7 (statement). The "loadstar statement" included detailed tables indicating, in tenths-of-an-hour, work performed by each attorney, broken down by date and with descriptions of the work. *Id.* at 3-7. Plaintiff offered to accept $7,000 in attorney's fees and costs. *Id.* at 1.

It is unclear to the Court how, or whether, defendants responded to Warbasse's email of July 10, 2014, and the "loadstar statement" he provided. *See*, *e.g.*, Opposition, ECF 31 at 8. In any event, Coppola filed the pending Motion twelve days later, on July 22, 2014. *See* ECF 26.

Additional facts are included in the Discussion.

**Discussion**

As a preliminary matter, defendants urge the Court to consider plaintiff's Motion under the standards applicable to the MWPCL, rather than under the FLSA. ECF 31 at 9. They argue that, because defendants' offer to Coppola was "100% of that which he requested" pursuant to the MWPCL, the offer "was made exclusively pursuant to the MWPCL." *Id*. This argument is puzzling, as both sides have previously represented to this Court that the Offer of Judgment constituted a settlement of Coppola's FLSA claims. *See, e.g.*, ECF 19 ¶ 6 ("Defendants' payment to Plaintiff of the full amount of claimed unpaid wages ensures that Plaintiff's individual interests and the broader public interest in the integrity *of the FLSA* and corresponding state laws are all being satisfied.") (emphasis added). Pursuant to the standards applicable to the MWPCL, defendants ask the Court to deny plaintiff any award of fees or costs. ECF 31 at 2.

As defendants recognize, ECF 31 at 9, the FLSA entitles successful plaintiffs to reasonable attorney's fees and costs. 29 U.S.C. § 216(b). "A plaintiff is a prevailing party for the purpose of attorney's fees if the plaintiff succeeds 'on any significant issue in litigation which achieves some of the benefit … sought in bringing suit.'" *Almendarez v. J.T.T. Enterprise Corp.*, 2010 WL 3385362, at *1 (D. Md. Aug. 25, 2010) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Defendants do not argue that Coppola did not prevail on his FLSA claim. *See generally* ECF 31; *see also* ECF 19 ¶¶ 4, 6. Thus, it appears that plaintiff is entitled to reasonable attorney's fees and costs. 29 U.S.C. § 216(b).

In any event, the Offer of Judgment itself expressly provided that 1) defendants would pay reasonable attorney's fees and costs and 2) fees would be assessed pursuant to "Federal

standards." Offer, ECF 13-1 at 1. It states: "Defendants offer to pay Plaintiff's reasonable attorneys' fees and costs, to be determined by the Court in accordance with Federal principles governing payment of attorneys' fees and costs." Accordingly, I will consider plaintiff's Motion pursuant to federal standards. *See also* ECF 24 (Order of Judgment) ¶ 2.

Under federal law, the amount of attorney's fees to be awarded in any case is left to the sound discretion of the district court. *E.g.*, *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013), *as amended* (Jan. 23, 2014); *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984) (FLSA requires award of fees and costs, but amount is discretionary). But, the award must be "reasonable." *E.g.*, *McAfee*, 738 F.3d at 88. "A 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious … case." *Perdue v. Kenny*, 559 U.S. 542, 552 (2010).

"The Supreme Court has indulged a 'strong presumption'" that the "lodestar" amount, as defined by the Court in *Hensley*, 461 U.S. at 434, "represents a reasonable attorney's fee." *McAfee*, 738 F.3d at 88–89; *see also Perdue*, 559 U.S. at 552. The lodestar amount is equal to counsel's "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). Because the lodestar calculation relies on "objective," third-party standards—*i.e.*, "the prevailing market rates in the relevant community," and what the attorney would have received from "a paying client who was billed by the hour in a comparable case"—the standard "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Perdue*, 559 U.S. at 551-52.

The movant "bears the burden of documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. Notably, counsel "should make a good faith effort to

exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as

a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."

*Id*. at 434. "'Hours that are not properly billed to one's *client* also are not properly billed to

one's *adversary* pursuant to statutory authority.'" *Id*. (quoting *Copeland v. Marshall*, 641 F.2d

880, 891 (D.C. Cir. 1980) (en banc) (emphasis in *Copeland*)). The movant also bears the burden

to show that any upward adjustment to the lodestar amount is necessary. *E.g.*, *Blum v. Stenson*,

465 U.S. 886, 898 (1984).

In considering whether the lodestar amount is indeed reasonable—or whether it should be

adjusted up or down—the Fourth Circuit has directed courts to rely on the twelve factors set out

in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *E.g.*,

*McAfee*, 738 F.3d at 89. "[T]he court considers the *Johnson* factors 'in conjunction with the

lodestar methodology' and, 'to the extent that any of these factors already has been incorporated

into the lodestar analysis, [it does] not consider that factor a second time.'" *Dorsey v. TGT*

*Consulting, LLC*, 2014 WL 458999, at *2 (D. Md. Feb. 4, 2014) (quoting *E. Assoc. Coal Corp. v.*

*Dir., Office of Workers' Comp. Program*, 724 F.3d 561, 570, 570 n.5 (4th Cir. 2013)); *see also*,

*e.g.*, *Hensley*, 461 U.S. at 434 n.9 ("[M]any of the [*Johnson*] factors usually are subsumed within

the initial calculation of hours reasonably expended at a reasonable hourly rate.").

The twelve factors articulated in *Johnson*, 488 F.2d at 717-19, as quoted in *Hensley*, 461

U.S. at 430 n.3, are:

> "(1) the time and labor required; (2) the novelty and difficulty of the questions;
> (3) the skill requisite to perform the legal service properly; (4) the preclusion of
> employment by the attorney due to the acceptance of the case; (5) the customary
> fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the
> client or the circumstances; (8) the amount involved and the results obtained; (9)
> the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of

the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

After consideration of the lodestar amount and any appropriate adjustments, the Court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones," and "award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88 (citations omitted); *see also Grissom*, 549 F.3d at 313 (same); *Jackson v. Estelle's Place, LLC*, 391 F. App'x 239, 243 (4th Cir. 2010) (affirming application of same analysis to fees awarded under FLSA).

Accordingly, I will begin by calculating the lodestar amount, then consider whether any of the *Johnson* factors rebut the "strong presumption" that the lodestar amount "represents a reasonable attorney's fee," *McAfee*, 738 F.3d at 88-89. I will then determine whether the resulting amount should be further reduced in proportion to the success or failure of plaintiff's claims. *Id.* at 88. I will conclude with a separate consideration of costs.

In undertaking this analysis, I am mindful that the Supreme Court has said that the lodestar method produces presumptively reasonable fee awards, and is "readily administrable." *Perdue*, 559 U.S. at 551 (citing *Dague*, 505 U.S. at 566; *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 610 (2001)). And, the Supreme Court has said that trial courts "need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, ─── U.S. ───, 131 S. Ct. 2205, 2216 (2011). Thus, trial courts "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

### A.  The Lodestar Amount

As stated, the lodestar amount is equal to counsel's "reasonable hourly rate multiplied by hours reasonably expended."  *Grissom*, 549 F.3d at 320-21.  Here, plaintiff seeks fees for the work of two attorneys, Hoffman and Warbasse.  Motion, ECF 26 at 6.

### 1. Reasonable Rate

In his supporting affidavit, Hoffman states that he "recover[s] $325/hour in private settlements."  ECF 26-2, Hoffman Aff. ¶ 8.  Hoffman also points the Court to three other cases in this District, in which plaintiffs were awarded fees for Hoffman's services at a rate of $300/hour. *Id.* ¶ 9; *see also*, *e.g.*, *Dorsey*, 2014 WL 458999, at *2 (collecting cases).  The decisions Hoffman cites were issued in 2011 and 2012, "before [Hoffman] began [his] fifteenth year of practice … ."  Hoffman Aff. ¶ 9.  I note that Judge Blake of this District also awarded a plaintiff fees for Hoffman's services at a rate of $300/hour in February 2014.  *Dorsey*, 2014 WL 458999, at *2.

In his supporting affidavit, Warbasse avers that he has twenty-eight years of experience "in employment-related litigation."  ECF 26-3, Warbasse Aff. ¶ 3.  He states:  "My customary hourly rate for FLSA litigation was $400/hour up until July 1, 2014 when it increased to $425/hour."  *Id.*  Warbasse also cites two decisions by other judges in this District, issued in 2011 and 2014, in which plaintiffs were awarded $400/hour for his services.  *Id.*

With respect to a requested hourly rate, the Fourth Circuit follows the "locality rule," by which "'[t]he community in which the court sits is the first place to look to in evaluating the prevailing market rate.'"  *Montcalm Pub. Corp. v. Va.*, 199 F.3d 168, 173 (4th Cir. 1999) (citation omitted).  Ordinarily, "[e]vidence of the prevailing market rate ... takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate."  *CoStar*

*Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000).  However, this District has adopted Rules and Guidelines for Determining Attorneys' Fees in Certain Cases (the "Guidelines"), which are located in Appendix B of the Local Rules of this Court.  Thus, "[i]n the District of Maryland, this market knowledge is embedded in the Guidelines."  *Gonzalez v. Caron*, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011).

The Guidelines's recommended rates changed during the course of this dispute, on July 1, 2014.  *See* Standing Order 2014-03 (June 26, 2014) (stating rule changes effective July 1, 2014 and applicable to "all cases pending as of July 1, 2014, to the extent practicable"), *available at* http://mddb-iis/webdatapages/DisplayStandingOrder.asp.  However, as discussed, *infra*, because I find that Hoffman and Warbasse completed all but .4 hours of their work for plaintiff prior to July 1, 2014, the change in the Guidelines has no appreciable effect on the attorneys' reasonable rates in this case.  The attorneys' requested rates are within the Guidelines, at the upper end of the accepted rates for attorneys with comparable years of experience.  *See* Guidelines (2011).

With regard to Hoffman, a $300/hour fee in this case is reasonable.  As Hoffman points out, Hoffman Aff. ¶ 9, other judges in this District have repeatedly determined that this is a reasonable rate for his services in other FLSA actions.  *E.g.*, *Dorsey*, 2014 WL 458999, at *2.  Although Hoffman explains that the prior decisions he cites were issued before he "began [his] fifteenth year of practice," Hoffman Aff. ¶ 9, plaintiff makes no argument in his Motion as to why he now deserves $325/hour, rather than $300/hour, for his services.  *See* ECF 26 at 6-8.

In support of his request, Hoffman has provided an affidavit from Julie C. Janofsky, Esq. ECF 35-5 at 3-6.  Janofsky avers that "[o]ver the past thirty-plus years, [she has] handled

hundreds of civil cases," including "insurance coverage disputes, employment matters, and other fee-shifting litigation brought in the state courts throughout Maryland and in this Court."   ECF 35-5 at 4-5 ¶ 6.   Moreover, in 1999, she "served on a committee of attorneys and judges that revised the lodestar fee calculation guidelines for employment and civil rights litigation in" this District.   *Id.* at 4 ¶ 5.   Janofsky adds that, from her "own experience," she is "familiar with the difficulties and complexities inherent in the preparation and litigation of an employment dispute in court," as well as "law firm billing practices … in the Baltimore-Washington region."   *Id.* at 5 ¶ 8.

In addition, Janofsky lauds Hoffman as "one of the most knowledgeable FLSA attorneys" she "has ever met."   *Id.* at 6 ¶ 8.   In her view, "$325 per hour is reasonable given Mr. Hoffman's considerable skill, work ethic, and knowledge of the FLSA, which qualities are all similar—if not superior—to those of much more senior lawyers in the Baltimore-Washington Metropolitan area."   *Id.* ¶ 9.   But, Janofsky does not explain why Hoffman's work is worth $25/hour more than it was approximately one year ago.   *See Dorsey*, 2014 WL 458999, at *2.   I will award attorney's fees for Hoffman's services at a rate of $300/hour.

With regard to Warbasse, I also find that his request of $400/hour for services performed prior to (or on) July 1, 2014, is a reasonable rate, in keeping with the decisions of my colleagues in this District.   *E.g.*, *Dorsey*, 2014 WL 458999, at *2.   Moreover, the increase in his hourly rate as of July 1, 2014, to $425 per hour, is not applicable to the claim related in this case, which resulted in a settlement approved on July 1, 2014.   *See* ECF 20.

## 2. Hours Reasonably Expended

As stated, plaintiff has submitted tables summarizing the hours for Hoffman and Warbasse expended on work they attribute to plaintiff's claims.  *See* Tables, ECF 26-1 at 7-9 (Hoffman); ECF 26-1 at 1-4 (Warbasse).  The Tables are commendably detailed and organized in accordance with the Guidelines.  They indicate the nature of the work performed by each attorney and, in tenths-of-an-hour, how much work was done, and on what date.  *E.g.*, ECF 26-1 at 1 ("Tel. w/ R. Coppola re: potential wage claims re: Fratellis Restaurant (1.4); Research re: potential defendants … . Tel. w/ E. Ford re: potential wage and hour claims … .").

In total, plaintiff asks the Court to award $8,779 in attorney's fees.  ECF 26 at 4.  In particular, he "seeks $4,504.00 of the $11,260.00 of the attorneys' fees incurred, after voluntary reductions, through the entry of judgment on 7/1/14, and all of the $4,275.00 of the attorneys' fees incurred, after voluntary reductions, in preparing and prosecuting this Motion [for fees]." *Id*.  Plaintiff does not explain in his Motion how he arrived at a request of $4,504.00 for work performed prior to July 1, 2014.  *See id.*.  But, in his Reply, plaintiff explains that Hoffman and Warbasse believe that "forty percent of their pre-[fee]-petition time is fairly attributable to Plaintiff Coppola," in light of the facts that there have been five other plaintiffs in this case, and that "Plaintiff Coppola was far more actively involved in the case than any of the other Plaintiffs … ."  ECF 35 at 4.  Accordingly, the $4,504.00 amount represents forty percent of the fees incurred prior to this Court's approval of plaintiff's settlement, on July 1, 2014.  *Id.*[3]

---

[3]  I note that the sum of the hours billed by both attorneys *prior* to July 1, 2014, as stated in the Tables they have provided (24.7, 4.7), multiplied by their requested rates ($400, $325), yields a sum of $11,407.00, not $11,260.00.  *See* ECF 26-1.  The amount billed including work done on July 1, 2014, at Warbasse's higher rate, would be slightly higher still.  *See also* Opposition, ECF 31 at 24 n.14 (pointing out amount in Motion does not match sums in Tables).

In response, defendants dispute a number of plaintiff's proposed charges. In particular, defendants object to the following specified charges and/or categories of charges, which I have numbered for ease of reference:

1) Time spent working on behalf of plaintiffs other than plaintiff Coppola, *e.g.*, entries for phone calls with other plaintiffs, ECF 31 at 13, 16-17;
2) Time for "work needlessly performed" after defendants presented their Offer of Judgment to plaintiff Coppola on May 12, 2014, including an Amended Complaint and a response to defendants' Motion to Dismiss, ECF 31 at 14-15;
3) Time spent preparing plaintiff's retainer agreement, ECF 31 at 16;
4) Time spent by Hoffman "reviewing," which defendants argue is, *inter alia*, redundant, ECF 31 at 22-23; and
5) Time spent preparing the Motion and supporting exhibits, ECF 31 at 15-16.

Defendants reiterate their belief that $1,350, "at most," is a reasonable award of attorney's fees, without further explanation. ECF 31 at 28. I will address each of defendants' objections in turn.

Defendants are correct that the Tables include many entries for work performed on behalf of other plaintiffs. Plaintiff's attorneys have written off work performed for plaintiff Clark, who withdrew from the case. *E.g.*, ECF 26-1 at 1. But, plaintiff purports to bill defendants for, *e.g.*, a call between his attorneys and plaintiff Ford; their review of Ford's paperwork; an email from Ford regarding other potential plaintiffs; and drafting of and submission of a Second Amended Complaint, to which, as discussed, Coppola was not a party. *Id.*

I agree with defendants that plaintiff's attempt to bill defendants for work on behalf of other plaintiffs, whose claims are still pending and not a part of the settlement at issue, is plainly inappropriate. As a threshold matter, the FLSA only entitles prevailing plaintiffs to fees and costs. 29 U.S.C. § 216(b); *Almendarez*, 2010 WL 3385362, at *1. Thus, the appropriate time for plaintiff's attorneys to be paid for their phone calls with, *e.g.*, plaintiff Ford would be when and

if plaintiff Ford prevails.[4] Therefore, I will deduct from the Tables all work performed by plaintiff's attorneys on behalf of plaintiffs other than Coppola.

Similarly, I agree with defendants that work performed by plaintiff's attorneys on an Amended Complaint and in response to defendants' Motion to Dismiss was "work needlessly performed" with respect to Coppola's claims. As defendants state: "The filing of an amended complaint in this case was not time sensitive and delaying the filing until after Mr. Coppola's Offer was either accepted or rejected would have had no bearing on the case." ECF 31 at 15.

In this regard, there is no basis to conclude that defendants would have objected to a request for extension of time to respond. Nor is it likely that any court would have denied such a request. Indeed, on May 19, 2014—after defendants' Offer—plaintiff filed, and this Court granted, a motion for extension of time to respond to defendants' Motion to Dismiss. *See* ECF 10 (motion); ECF 11(order). Plaintiff himself suggested the response deadline of May 23, 2014; he easily could have requested more time. Thus, for the same reason, plaintiff's subsequent response to defendants' Motion to Dismiss was also "not time sensitive," if necessary at all. Therefore, I am satisfied that plaintiff's attorneys' time on the Amended Complaint and the response to the defendants' Motion to Dismiss was not "reasonably" expended with regard to Coppola's claims. *See Hensley*, 461 U.S. at 434 ("Counsel should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as

---

[4] In theory, some information provided by Ford may have strengthened Coppola's claims. Perhaps, for example, Ford provided information pertinent to the question of the Sakelli's liability as employers. However, plaintiff does not argue this point or otherwise explain the relationship between his attorneys' work on his claims and his attorneys' work with other plaintiffs.

a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.").

Accordingly, I will deny plaintiff the one hour billed by Warbasse and the .1 hours billed by Hoffman for preparation of the Amended Complaint; the 4.1 hours Warbasse billed for preparation of the response to defendants' Motion to Dismiss that were incurred after defendants' offer of judgment, *i.e.*, after May 12, 2014; and the .9 hours Hoffman billed for the same. *See* ECF 26-1 at 4. But, I will grant plaintiff fees for the 4.4 hours Warbasse spent reviewing defendants' Motion to Dismiss and preparing a response, incurred before May 12, 2014, *id.* at 3-4, and the .5 hours spent by Hoffman on the same. *See* ECF 26-1 at 7. I will also grant plaintiff the .2 hours it took his attorneys to prepare, on May 19, 2014, the motion for extension of time to respond to defendants' motion. *See* ECF 10 (motion); Tables, ECF 26-1 at 4.

I also agree with defendants that plaintiff is not entitled to bill them for the time his attorneys spent preparing his retainer agreement. Opposition, ECF 31 at 16; *see Hensley*, 461 U.S. at 434 (citation omitted) ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."). I will deduct the .2 hours Warbasse billed for this task. ECF 26-1 at 1.

As to Hoffman's time spent "reviewing," defendants generally object to all work described this way. Opposition, ECF 31 at 22-23. And, they correctly point out that most of Hoffman's billed tasks are for "reviewing." *Id.*; ECF 26-1 at 7-9. However, a closer look at the Tables reveals that some of this time was spent "reviewing" defendants' filings and orders of the Court, and some was spent "reviewing" Warbasse's work. Specifically, excluding entries

already deducted for the reasons stated above, it appears Hoffman spent 1.2 hours doing the former and .5 hours doing the latter. ECF 26-1 at 7-9.

Time spent by multiple attorneys to get or keep "up to speed" on a case may be unreasonable where it reflects unnecessary overstaffing. *See*, *e.g.*, *Key Gov't Fin., Inc. v. E3 Enterprises Inc.*, 2 F. Supp. 3d 741, 754 (D. Md. Mar. 4, 2014) ("There does not appear to have been any benefit to the Plaintiff or the judicial process for six lawyers and three paralegals to have been involved in this relatively straightforward breach of contract case and for multiple attorneys to have expended hours bringing themselves up to speed on the case."). That said, the 1.2 hours spent by Hoffman here are not excessive, in light of the low amount and the likely expectation that Hoffman could perform other tasks as needed and would need to be familiar with the case history.

The time Hoffman spent reviewing Warbasse's work, however, although also minimal, is redundant and excessive, in light of the experience and billing rates of both attorneys involved. Defendants reasonably argue that Warbasse, an attorney with twenty-eight years' experience in this field, billing at a rate of $400/hour, should not need another attorney to review basic filings, in "a case that Plaintiff's counsel described themselves as 'present[ing] straight-forward issues.'" ECF 31 at 22-23 (quoting Motion, ECF 26 at 5); *see also*, *e.g.*, ECF 26-1 at 7 (.2 hours billed by Hoffman for reviewing the Complaint; .1 hours billed by Hoffman for reviewing "filing of Complaint"); *see also Manna v. Johnny's Pizza, Inc.*, CCB-13-00721, 2014 WL 794357, at *7 (D. Md. Feb. 25, 2014) (considering objection raised by Hoffman, as counsel for defendants, that "plaintiffs' counsel should have exercised billing discretion by allowing only one timekeeper to claim hours for meetings and phone calls conducted with other timekeepers"). Accordingly, I

will award plaintiff 1.2 hours for Hoffman's time spent reviewing filings, but deny plaintiff .5 hours for Hoffman's time spent reviewing Warbasse's work.

Finally, I agree with defendants that plaintiff should not be awarded attorney's fees for the time his attorneys spent preparing this Motion and the supporting exhibits. Certainly, it is true that prevailing plaintiffs *may* be awarded fees for attorney time spent preparing a fee petition. *See*, *e.g.*, Guidelines (2011), Rule 1(b)(x) (specifying that counsel should present time spent on "fee petition preparations" separately from time spent on other tasks). In his Reply, ECF 35 at 11, plaintiff cites two cases in this District where plaintiffs were recently awarded fees for time spent preparing a fee petition: *Manna*, *supra*, 2014 WL 794357, and *Nelson v. A & H Motors, Inc.*, JKS-12-02288, 2013 WL 388991, at *2-3 (D. Md. Jan. 30, 2013) (Shulze, Mag. J.). Plaintiff's attorney, Hoffman, was an attorney of record in both cases, for defendants and then plaintiffs, respectively, *compare* CCB-13-00721 (docket) *and* JKS-12-02288 (docket), and both decisions involve fee petitions pursuant, at least in part, to the FLSA.

In *Manna*, the court reasoned, 2014 WL 794357, at *6 (citations omitted):

> The defendants also oppose the 12.9 hours dedicated to preparing the memorandum in support of the fee petition. *They argue that plaintiffs' counsel should recover nothing for the preparation of their memorandum, because they failed to negotiate attorneys' fees in good faith.* The court cannot agree. Although the court does not understand why plaintiffs' counsel refused to send their billing statements in a printable or hard-copy format, Hoffman took an aggressive stance during negotiation, which created conflict with opposing counsel and prevented them from identifying areas of agreement. He called plaintiffs' counsel's fee requests "outrageous and excessive," and relayed a "firm offer" of $5,000.00. Plaintiffs' counsel, by contrast, attempted to narrow the issues in dispute in the fee petition and were willing to use $5,000.00 as a starting point for settlement discussions. Nevertheless, the … court will hold plaintiffs' counsel to their $2,500 estimate … .

Thus, it appears that in *Manna* the court awarded plaintiffs fees for time spent preparing the fee petition because defendants' attorney—Hoffman—negotiated in bad faith, and effectively forced plaintiffs to file a fee petition. *Id*. And, in *Manna*, defendant's attorney—Hoffman—accused plaintiffs' attorneys of negotiating in bad faith because they "refused to send their billing statements in a printable or hard copy format," *id.*, even though plaintiffs' attorney *did* send their "raw billing statements," in some other format. *Id*. at *2. Ironically, that is more than plaintiff's attorneys were willing to do in this case, until July 10, 2014, *see* ECF 35-1 at 1 (email); ECF 35-1 at 2-7 (statement), at which point they had already said they believed the parties were at an "impasse" and had already started drafting the fee petition. *See* ECF 31-11 at 2 (email from Warbasse from to Millman, dated July 9, 2014).

In *Nelson*, the other case to which plaintiff has directed the Court's attention, it is true that plaintiffs were awarded fees for preparation of the fee petition, without much discussion from the court. *Nelson*, 2013 WL 388991, at *3. But, plaintiffs, represented by Hoffman, were denied an award of fees for preparation of their reply to defendant's opposition, because the court found that it was "inappropriate for counsel to seek recovery for time spent responding to an opposition that was rendered necessary in large part by *counsel's own error*." *Id.* (emphasis added). More specifically, the court was referring to a billing error that defendants identified in their opposition, and which the court additionally found "raise[d] the possibility of additional error [throughout the billed hours] and warrant[ed] a deduction of 5% from the remaining hourly balance." *Id*.

In light of Hoffman's own arguments to another judge in this District, less than one year ago in *Manna*, and in light of Hoffman's experience in *Nelson*, counsel's position in this case is

surprising.[5] The Court recognizes that Hoffman's differing arguments in all three cases reflect, in part, differences in clients and posture. But, in theory, Hoffman's counsel and strategic choices were guided in each case by the same law—that is to say, in each case, prevailing plaintiffs were entitled to "reasonable" fees, no more and no less. This standard is not as pliable as Hoffman appears to believe.

As Hoffman argued in *Manna*, and as the court held in *Nelson*, it is not "reasonable" to charge anyone—client or adversary—for fees incurred solely as a result of counsel's own failure to negotiate in good faith. *See also McAfee*, 738 F.3d at 90-91 (affirming district court's reduction in fees as unreasonable where counsel failed to "contemplate a settlement strategy" with regard to attorney's fees); *id.* (quoting *Thomas v. Nat'l Football League Players Ass'n,* 273 F.3d 1124, 1130 n.9 (D.C. Cir. 2001) ("[A] district court 'has discretion to consider settlement negotiations in determining the reasonableness of fees but it is not required to do so.'")). Accordingly, I will not tax defendants for the unreasonable gamesmanship of plaintiff's attorneys.

In sum, I find plaintiff's attorneys "reasonably expended" the following hours:

- 2.1 hours for call with Coppola, research on potential defendants, call between Warbasse and Hoffman re: potential case, billed by Warbasse on 1/28/2014
- .5 hours billed by Warbasse for communications with Coppola on 2/7/2014

---

[5] I refer specifically to counsels' behavior in negotiations. Moreover, as counsel for defendants in *Manna*, Hoffman objected to many of the same things for which he and Warbasse are trying to bill defendants, including, *e.g.*, objections to "hours claimed during the 'pre-engagement' stage of the case, before plaintiffs' counsel were retained," 2014 WL 794357, at *3, reminiscent of plaintiff's claim for .2 hours spent preparing his own retainer; objections to "compensation for clerical tasks," including bills for "simply filing documents," *id.* at 5, a task for which Warbasse has repeatedly billed defendants, *e.g.*, ECF 26-1 at 3-4; and objections to *all* "fees incurred between April 11, 2013, when [Rule 68] offers of judgment were made, and April 26, 2013, when offers were accepted," 2014 WL 794357, at *6. As discussed, plaintiff has, attempted to bill defendants for similar work here.

- 1.4 hours billed by Warbasse for drafting Complaint on 3/6/2014
- .9 hours billed by Warbasse for call with Coppola and revising Complaint on 3/18/2014
- .3 hours for the same, on 4/8/2014
- .5 hours billed by Hoffman for reviewing filings between 4/8/2014 and 4/30/2014
- .6 hours billed by Warbasse for reviewing motion to dismiss on 5/2/2014
- .5 hours billed by Hoffman for same
- .2 hours billed by Warbasse to review defendants' Offers of Judgment on 5/12/2014
- .3 hours billed by Hoffman for same, on 5/13/2014
- .3 hours billed by Warbasse for call with Coppola regarding Offer on 5/13/2014
- .3 hours billed by Warbasse to draft Coppola's notice of acceptance on 5/23/2014
- .3 hours billed by Warbasse for communication with defense counsel regarding Offers on 5/27/2014
- .2 hours billed by Warbasse for call with Hoffman regarding Offers on 5/29/2014
- 1.3 hours billed by Hoffman for call with Warbasse, research, and communication with defense counsel regarding Offers on 5/29/2014
- 2.4 hours billed by Warbasse for review of filings, communications with defense counsel, Coppola, and Hoffman regarding Offer between 6/2/2014 through 6/13/2014
- .6 hours billed by Hoffman for same between 6/2/2014 and 6/10/2014
- .5 hours billed by Warbasse to revise motion for judicial approval of Offer on 6/13/2014
- .3 hours billed by Warbasse to review Judgment and contact Coppola on 7/1/2014
- .1 hours billed by Hoffman to review Judgment on 7/9/2014

This amounts to a total of 10.3 hours of work by Warbasse and 3.2 hours by Hoffman.

At a rate of $400/hour and $300/hour, respectively, that yields a lodestar amount of $5080.

## B. The *Johnson* Factors

As the Supreme Court has said, many of the *Johnson* factors "usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9; *accord Perdue*, 559 U.S. at 553 (citations omitted) ("[W]e have noted that the lodestar amount includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee … .").

Here, plaintiff does not seek an upward adjustment to the lodestar amount based on any of the *Johnson* factors.  *See generally* Motion, ECF 26.  Indeed, as just discussed, plaintiff is actually seeking less than the lodestar amount.

Defendants urge reductions to the lodestar amount based on two *Johnson* factors that are not subsumed by the lodestar calculation: 1) whether the fee is fixed or contingent, ECF 31 at 23, and 2) the "undesirability" of the case.[6] *Id.* at 25-26.

With regard to the first factor cited, defendants argue, generally, that the contingency-fee nature of cases such as this, in which attorneys may rely on fee-shifting statutes, creates an "incentive to unnecessarily churn the file and drive up fees," and therefore the Court should "take a hard look at the reasonableness and economy of the actions taken in this case, and reduce any award accordingly." *Id.* at 23.  However, a general argument such as this, if accepted, implies there ought to be some automatic reduction in any case where an attorney relies exclusively on fee-shifting provisions.  I cannot agree to that.  Rather, I find that defendants' particular consideration is subsumed within the calculation of hours "reasonably expended." Accordingly, I will grant no additional reduction on this ground.

With regard to the second factor cited, in contrast to plaintiff's argument on this point that plaintiff's case presented the possibility of "protracted litigation," ECF 26 at 9, defendants argue that this was a very simple case, which might even have been settled "if [Coppola] or his counsel would have simply submitted a demand letter to Defendants prior to filing of a lawsuit."

---

[6] Most of defendants' objections discussed above are framed in their Opposition under *Johnson* factors that are plainly subsumed in the lodestar calculation, *e.g.*, the "customary fee and experience of attorneys," ECF 31 at 19-23, and the "time and labor required," *id.* at 13-17. Others are framed under the eighth *Johnson* factor—"the amount involved and the result obtained."  I will consider these arguments in my assessment of plaintiff's relative success.

ECF 31 at 26.  Defendants cite one decision in which a court imposed a reduction in the award of fees because the plaintiff made "no effort to contact the defendants about the alleged under payment before filing suit."  *Id.* (citing *Lowery v. Cash's Cabanas, Inc.*, 2011 WL 679457, at *7 (N.D. Fla. Jan. 4, 2011)).

In *Manna*, 2014 WL 794357, at *6, apparently at Hoffman's urging, the court imposed a ten percent fee reduction on plaintiffs for their failure to contact defendant "to see if a settlement could be reached" prior to filing suit.  Moreover, in *Manna*, 2014 WL 794357, at *6, *1, the defendant made offers of judgment before filing any response to the suit.  In contrast, defendants' claim here that they would have settled upon receipt of a demand letter is belied by their submission of a Motion to Dismiss before they made their offers of judgment.  Defendants' argument is thus unpersuasive, and no reduction will be awarded on this ground.

### C. Plaintiff's Failures and Relative Success

Considerations of success and failure are arguably among the *Johnson* factors.  *See Perdue*, 559 U.S. at 551 n.4 (quoting *Johnson* factor eight, "the amount involved and the results obtained").  But, the Fourth Circuit has instructed district courts to "subtract fees for hours spent on unsuccessful claims unrelated to successful ones," and "award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff," *after* calculation of the lodestar amount and consideration of the *Johnson* factors.  *McAfee*, 738 F.3d at 88 (citations omitted); *see also Jackson*, 391 F. App'x at 243 (explaining that district court effectively considered plaintiffs' relative success and failure under the eighth *Johnson* factor).

Here, in the context of their argument that only fee-standards applicable to the MWPCL should apply, defendants argue that Coppola has only succeeded on his MWPCL claim.  ECF 31

at 9-11.  However, as discussed, defendants' Offer settled all of Coppola's claims, including those under the MWHL and the FLSA.  Accordingly, I find that plaintiff was successful on all of his claims.

The degree of plaintiff's success is more difficult to determine, because neither the Complaint nor the Amended Complaint alleges a specific amount owed for any claim.  *See* ECF 1; ECF 9.  The Fourth Circuit has said that, "[w]hen considering the extent of the relief obtained, [courts] must compare the amount of the damages sought to the amount awarded."  *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005); *accord Nigh v. Koons Buick Pontiac GMC, Inc.*, 478 F.3d 183, 190 (4th Cir. 2007); *Galvez v. Americlean Servs. Corp.*, 11-CV-01351 JCC/TCB, 2012 WL 2522814, at *5 (E.D. Va. June 29, 2012) (considering fee award pursuant to FLSA settlement); *Gionfriddo v. Jason Zink, LLC*, RDB-09-01733, 2012 WL 1077765, at *3-4 (D. Md. Mar. 29, 2012) (same).

Both complaints make damages for Coppola's MWPCL claim easy to calculate. Plaintiffs alleged that defendants failed to pay Coppola a promised salary of $800 per week for seven of his eight weeks of employment, *e.g.* ECF 9 ¶ 15, and they sought an award of "three times the amount [of] earned wages not paid to Coppola in violation of the Maryland Wage Payment and Collection Law."  *Id.* at 10.  Thus, it appears that plaintiff was seeking approximately $16,800 (*i.e.*, $800 times 7 times 3) for his MWPCL claim.  But, he sought some additional unknown amount for his MWHL and FLSA claims, some of which are alleged in the alternative.  *See* ECF 9 at 8-10.

In their Opposition, defendants refer to Coppola's presentation of "various amounts for which he fails to provide any calculation (*e.g.*, minimum wage claim of $6,090; overtime claim

of $1,015).”  ECF 31 at 24.  Without further discussion of this point, and without reference to the treble damages requested in plaintiff's pleading, defendants conclude:  “Suffice it to say, Defendants disagree with these amounts; moreover, they do not even know how they were calculated.  As stated above, Mr. Coppola was paid $5,600 pursuant to the MWPCL based upon the claims he described in paragraph 15 of ECF 1.”  *Id.*

Based on the dearth of argument and information provided to the Court as to plaintiff's relative success, and because it appears that plaintiff's MWHL and FLSA wage claims were possibly all in the alternative to his MWPCL claims, I conclude that plaintiff has succeeded on his claims, and no reduction in fees is therefore warranted.  *See, e.g.*, *Galvez*, 2012 WL 2522814, at *5 (declining to reduce fee award where plaintiffs recovered 81.1 percent of the maximum award on their FLSA wage claim, although they agreed to a settlement that did “not assign value to their retaliation claim”).

## C. Costs

Plaintiff requests a total of $540 in costs, which includes a $400 filing fee and $140 paid to “Everyday Process Servers, Inc.”.  ECF 26-3, Warbasse Aff. ¶ 6.  Plaintiff correctly states that “District courts have discretion to determine the costs that will be taxed against losing defendants in FLSA cases.”  ECF 26 at 10 (quoting *Almendarez*, 201 WL 3385362, at *7).

Defendants urge the Court to deny any award for costs, for two reasons.  First, they argue that “there is no basis for assessing this entire $540 charge … solely to the representation of Mr. Coppola.”  ECF 31 at 27.  Second, they argue that plaintiff “has failed to submit any supporting documentation, other than Plaintiff's counsels' own self-serving affidavits, to substantiate these

costs." *Id.* They further assert that plaintiff has violated Local Rule 109(1)(b), which requires submission of "vouchers or bills supporting the cost." *Id*. at 28 (quoting Local Rule 109(1)(b)).

However, in its entirety, Local Rule 109(1)(b) (2011) states:

In any case where any costs other than the fee for filing the action are being requested, the bill of costs shall be supported by affidavit and accompanied by a memorandum setting forth the grounds and authorities supporting the request. Any vouchers or bills supporting the cost being requested shall be attached as exhibits.

The plain meaning of the Rule is that any "bill of costs" must be "supported by affidavit," as it is here, Warbasse Aff. ¶ 6, and that "any vouchers or bills supporting the cost," which may or may not exist, "shall be attached as exhibits."  Moreover, the filing fee and the service costs would have been the same if Coppola were the only plaintiff at the start of this suit. Accordingly, an award of the full costs requested is warranted.

### Conclusion

For the foregoing reasons, I will award plaintiff the $4,504 requested for attorney's fees that are unrelated to the preparation and argument of this Motion, and $540 in costs.  This amount represents a reasonable award, in light of counsels' reasonable rates, hours reasonably expended, and plaintiff's substantial success on his claims.

I reiterate, however, the well-established principle that "'petitions for attorneys' fees should not result 'in a second major litigation.'"  *E. Associated Coal Corp.*, 724 F.3d at 577 (quoting *Hensley,* 461 U.S. at 437); *see also* Reply, ECF 35 at 2 (same).  Indeed, the Fourth Circuit has said that "tribunals determining fee awards under fee-shifting statutes have a strong, appropriate concern 'in avoiding burdensome satellite litigation' over fee awards." *Id.* (quoting *City of Burlington v. Dague*, 505 U.S. 557, 566 (1992)).  Yet, in this case, the Court needlessly

spent many hours resolving this burdensome fee dispute, at the expense of other cases that require the Court's attention.

I recognize that plaintiff's initial offer to accept $2,240 for attorney's fees and costs was below the lodestar amount, as is plaintiff's current request for fees for work performed on matters *other than* this Motion.  But, in my view, the dispute here could have been avoided if plaintiff's attorneys had promptly provided defense counsel with the requested documentation and then negotiated in good faith.  To be sure, plaintiff ultimately provided defendants with amply detailed billing statements before filing the Motion, but only after counsel had declared an "impasse."  ECF 31-11 at 2.  Defendants apparently did nothing with the billing statements in the twelve days between their receipt of the statements and plaintiff's filing of the Motion.  Thus, at least in part, both sides are responsible for this "second litigation."

Nevertheless, the refusal of plaintiff's attorneys to add up the reasonably billed hours attributable to Coppola's claims is disappointing, if not troubling.  *See Hensley*, 461 U.S. at 437 (holding the movant "bears the burden of documenting the appropriate hours expended and hourly rates").  And, the fact that plaintiff's attorneys sought almost as much for their fee petition work ($4,275) as for their work on Coppola's claims ($4,504) smacks of fee-churning.[7]

---

[7] Moreover, Mr. Hoffman knows better.  In *Manna*, for example, Judge Blake chastised Mr. Hoffman for taking "an aggressive stance during negotiation, which created conflict with opposing counsel and prevented them from identifying areas of agreement."  In *Dorsey*, 2014 WL 458999, at *7, Judge Blake criticized Mr. Hoffman and his co-counsel for the "lack of professionalism evidenced in [counsels' email exchanges]," which Judge Blake found "consistent with the defendants' claims about plaintiffs' counsel's behavior during the entire case, which appears to have strained the negotiation process and delayed the parties in reaching a settlement [on attorney's fees]."  And, Judge Blake deducted 4.4 hours for time spent by Hoffman on plaintiff's bankruptcy case, which he and co-counsel argued was warranted because counsels' assistance was necessary to ensure the bankruptcy proceedings did not prevent [plaintiff's] participation in the FLSA lawsuit."  In *Durham v. Jones,* WMN-10-02534, 2012 WL

A separate Order follows, consistent with this Memorandum.


Date: February 19, 2015                      _____/s/_____
                                             Ellen Lipton Hollander
                                             United States District Judge

---

3985224, at *10 (D. Md. Sept. 10, 2012), in which Hoffman was sole counsel for plaintiff, Judge Nickerson declined to award the prejudgment interest requested on the fee award, noting that plaintiff's requested award at six percent "would far exceed the low rate of inflation that has persisted during the pendency of [the] case. . . ."  In *Spence v. Central Services, LLC*, CCB-10-03469, 2012 WL 142978, at *3 (D. Md. Jan. 13, 2012), another case in which Hoffman was sole counsel for plaintiffs, Judge Blake deducted 4.6 hours from plaintiffs' total award "because, as plaintiffs acknowledge, billing for travel time to Baltimore to file documents which could be filed by mail is not necessary (particularly at an attorney's billing rate)."